IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| DAVE WILLIAMS, | )<br>) |
| Plaintiff, | ) 2:15-CV-00855-NBF-CRE<br>) |
| vs. | )<br>) |
| DR. B. JIN, | )<br>) |
| Defendant, | )<br>)<br>) |

**REPORT AND RECOMMENDATION**

Cynthia Reed Eddy, United States Magistrate Judge.

## I. RECOMMENDATION

Presently before the court is Plaintiff Dave Williams' Motion for Partial Summary Judgment [ECF No. 51] and Defendant Byunghak Jin's Motion for Summary Judgment [ECF No. 59]. For the reasons that follow, it is respectfully recommended that plaintiff's motion be denied, that defendant's motion be granted and judgment be entered in defendant's favor.

## II. REPORT

a. Background

Plaintiff Dave Williams ("Plaintiff" or "Williams"), a prisoner currently confined at State Correctional Institution ("SCI") at Greene and proceeding *pro se*, initiated this civil rights action on July 1, 2015 alleging that Defendant Dr. Byunghak Jin ("Dr. Jin") violated his Eighth Amendment right by being deliberately indifferent to his serious medical needs.

Plaintiff alleges that for approximately two years, he was denied access to treatment for a hernia causing him to experience pain and bulging of the hernia. In 2007, while Plaintiff was incarcerated at SCI Greene, he underwent surgery for an incarcerated left inguinal hernia. The

1

surgery was performed at Southwest Regional Medical Center by Dr. A.J. Patterson on April 4, 2007. On April 13, 2007, Plaintiff was seen by Dr. Patterson in a post-operation follow-up appointment. Dr. Patterson noted: "[n]ow with swelling down may have a small right inguinal hernia noted. Patient at risk for a hydrocele. Return to Surgery PRN." 4/13/2007 Consultation Record [ECF No. 60-1 at p. 22]. A hydrocele is a fluid filled sac surrounding a testicle which can occur secondary to inflammation or injury. Def.'s Statement of Material Facts ("SMF") at ¶ 10 n. 1. [ECF No. 61]. "PRN" is medical jargon for *pro re nata* and is a common medical abbreviation for "as circumstances may require," or "as needed." Def.'s Br. [ECF No. 60] at 2. That same day, Dr. Jin reviewed Dr. Patterson's note and noted that Plaintiff should follow up as needed. 4/13/2007 Progress Notes [ECF No. 60-1 at p. 66]. Plaintiff made no other complaints regarding his left or right hernia, nor did he seek any treatment thereof. Sometime in or about October 2009, Plaintiff was transferred from SCI Greene to an institution in Michigan. He was returned to SCI Greene on May 5, 2011.

On May 10, 2011, Dr. Jin noted that Plaintiff had a right inguinal hernia which was easily reducible and planned to follow up in one year. 5/10/2011 Progress Notes [ECF No. 60-1 at p. 60]. On December 30, 2011, Plaintiff presented at sick call regarding his inguinal hernia. The attending physician, Dr. Park, noted that Plaintiff had surgery three years ago on a left inguinal hernia and also noted that Plaintiff had a right inguinal hernia that was sagging into his scrotum and recommended that he be referred to Dr. Jin to discuss surgery. 12/30/2011 Progress Notes [ECF No. 60-1 at p. 58]; 12/30/2011 Physician's Order Form [ECF No. 60-1 at p. 38]. On January 5, 2012, Dr. Jin examined Plaintiff regarding his right inguinal hernia and noted that the hernia was reducible and small in size. 1/5/2012 Progress Notes [ECF No. 60-1 at p. 57]. Dr. Jin ordered Plaintiff to wear a hernia strap for six months. 1/5/2012 Physician's Order Form [ECF

No. 60-1 at p. 37]. Plaintiff received the hernia strap on January 9, 2012. 1/6/2012 Progress Notes [ECF No. 60-1 at p. 57]. On January 13, 2012, Plaintiff attended sick call and advised Dr. Park that he needed a slip providing proof that he was to wear the hernia belt and Dr. Park put an order in Plaintiff's chart permitting his use of the hernia belt at all times. 1/13/2012 Progress Notes [ECF No. 60-1 at p. 57]; 1/13/2012 Physician's Order Form [ECF No. 60-1 at p. 37]. On April 24, 2012, Plaintiff advised Jennifer Trimai, PA-C that the strap on his hernia belt broke and that same day, Ms. Trimai put a note in Plaintiff's chart requesting that a new large hernia strap be ordered, as none were in stock. 4/24/2012 Progress Notes [ECF No. 60-1 at p. 56]; 4/24/2012 Physician's Order Form [ECF No. 60-1 at p. 37]. On April 26, 2012, Plaintiff returned to sick call and Ms. Trimai confirmed that the belt had been ordered. 4/26/2012 Progress Notes [ECF No. 60-1 at p. 56]. On April 30, 2012, Plaintiff signed up for sick call but did not show. Id. On May 2, Dr. Park provided Plaintiff with a new hernia belt to wear for six months and noted that the hernia was reducible. 5/2/2012 Progress Notes [ECF No. 60-1 at p. 56]; 5/2/2012 Physician's Order Form [ECF No. 60-1 at p. 36].

On July 16, 2012, Plaintiff presented at sick call complaining that the hernia remained unchanged since May 2, 2012. He also indicated that he needed a pass to go through the metal detector with his hernia belt and Mary Comer, PA-S issued the pass the same day. 7/16/2012 Progress Notes [ECF No. 60-1 at p. 55].

On February 19, 2013, Plaintiff presented at sick call seeking a renewal of his hernia belt prescription and pass for the metal detector and Dr. Park renewed the same for six months. 2/19/2013 Progress Notes [ECF No. 60-1 at p. 53].

On April 3, 2014 Dr. Jin issued an order to renew Plaintiff's hernia belt, noting that the hernia was easily reducible. 4/3/2014 Physician's Order Form [ECF 60-1 at p. 28]; 4/3/2014

Progress Notes [ECF No. 60-1 at p. 50].

On April 7, 2014, Lt. Kennedy advised PA-C Mary Comer that Plaintiff's hernia belt was confiscated by security and she noted that his authorization had expired in August 2013. Plaintiff was informed to put in a sick call to request that the hernia belt be reissued, and it was reissued on April 9, 2014. 4/7/2014 Progress Notes [ECF No. 60-1 at p. 49]. On April 11, 2014, Plaintiff presented at sick call complaining that the hernia belt was too big and was seen by Janine Sarver-PA. She noted that Plaintiff was "not in any pain" and exchanged the belt for a smaller size. Id.

On January 16, 2015, Plaintiff was seen by a physician assistant expressing complaints about his hernia and inquiring about surgery. 1/16/2015 Progress Notes [ECF No. 60-1 at p. 46]. The PA noted that Plaintiff's hernia was reducible and advised him to continue using the belt and follow up as needed. Id.

On April 14, 2015, Dr. Jin reauthorized Plaintiff's use of the hernia belt and noted that Plaintiff had a right inguinal hernia to his upper scrotal sac, which was self-reducing using the hernia belt. 4/14/2015 Progress Notes [ECF No. 60-1 at p. 46]; Physician's Order Form [ECF No. 60-1 at p. 26].

Plaintiff filed the instant action on July 1, 2015 solely against Dr. Jin. Plaintiff contends that Dr. Jin's determination that Plaintiff's hernia did not require surgery and treatment of his condition with a hernia belt violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs in the treatment of his right inguinal hernia seeking damages and injunctive relief. On July 13, 2016, Plaintiff filed a motion for partial summary judgment

    b. <u>Standard of Review</u>

*a. Pro Se Litigants*

*Pro se* pleadings are held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106(1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, *Hunterson v. DiSabato,* 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). In other words, if the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc*., 296 F.3d 376, 378, (5th Cir. 2002). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

*b. Motions for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56*

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Live Ins. Co.,* 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.* depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex,* 477 U.S. at 322. *See also Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Batsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007). When deciding a motion for summary judgment, in addition to the evidence presented by the parties, a court may consider facts of which it can take judicial notice. *United States v. Weber*, 396 F.2d 381, 386, n. 10 (3d Cir. 1968) ("This Circuit has taken the position that under F.R.Civ.P. 56 a court may take judicial notice of its own public records containing sworn testimony, affidavits and similar material described in F.R.Civ.P.

56(c)."). "This standard does not change when the issue is presented in the context of cross-motions for summary judgment." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)).

    c. <u>Discussion</u>

        *i.*    *Eighth Amendment Deliberate Indifference*

In the present case, Plaintiff maintains that Dr. Jin was deliberately indifferent to a serious medical issue in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiff asserts his Eighth Amendment violation claim against Dr. Jin under 42 U.S.C. § 1983 ("Section 1983"), which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

To state a claim under Section 1983, a plaintiff is required to show that an individual acting under color of state law violated the plaintiff's constitutional rights or statutory rights. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted). "[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed ... deliberate indifference to a prisoner's serious illness or injury states

a cause of action under § 1983." *Id*. at 104–05 (citations omitted).

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id*.

The "deliberate indifference" a plaintiff must allege lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other" and is frequently equated with recklessness as that term is defined in criminal law. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). This standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979). Where a prisoner has received medical care and only the adequacy of the treatment is disputed, courts are often reluctant to second guess professional medical judgment. See id. However, deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. *See Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir.2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care.").

An inmate's disagreement with the diagnosis or course of treatment does not establish "deliberate indifference" under the Eighth Amendment. *Estelle*, 429 U.S. at 106. Numerous courts when asked to determine whether a prisoner's Eighth Amendment right has been violated for a doctor's failure to recommend surgery to treat a prisoner's hernia have found that the treatment plan and decision to recommend surgery for a hernia lies squarely within the medical

judgment of the treating physician and does not constitute an Eighth Amendment violation. *McCabe v. Pennsylvania Dep't of Corr.*, No. 1:CV-12-00293, 2012 WL 6055024, at *7 (M.D. Pa. Dec. 5, 2012), *aff'd*, 523 F. App'x 858 (3d Cir. 2013) (no Eighth Amendment violation for failing to treat a prisoner's reducible hernia with surgery); *Brown v. Beard*, 445 F. App'x 453, 455 (3d Cir. 2011) (no Eighth Amendment violation where prison medical staff treated prisoner's umbilical hernia with pain medication and abdominal binder rather than recommending surgery); *Winslow v. Prison Health Servs.*, 406 F. App'x 671 (3d Cir. 2011).

For example, in *Winslow v. Prison Health Servs.*, the Court of Appeals for the Third Circuit in a non-precedential opinion determined that prison doctors did not act with deliberate indifference to prisoner's medical needs by not recommending surgery for the treatment of the prisoner's hernia and instead prescribing a hernia belt, even though the prison doctors considered the cost of the prisoner's treatment in declining to order surgery. 406 F. App'x 671, 675 (3d Cir. 2011). The doctors testified that the standard treatment for an inguinal hernia was non-surgical and that with proper treatment that the prisoner's hernia could heal without surgery, and although the prisoner provided his own expert who testified that hernias generally require surgery, the court found that this amounted to negligence which does not demonstrate a deliberate indifference to the prisoner's medical needs. *Id*.

Here, it is undisputed that Plaintiff was seen by medical personnel on numerous occasions for treatment of his right inguinal hernia and Dr. Jin concluded that his right inguinal hernia did not require surgery and was reducible by wearing a hernia belt. Despite this medical attention, Plaintiff continued to suffer from discomfort and seeks surgery for his right inguinal hernia instead of being treated with the hernia belt. This is clearly a case in which Plaintiff disagrees with the treatment provided to him by Dr. Jin. Plaintiff received medical attention for

his right inguinal hernia but unfortunately continues to suffer from discomfort. As previously set forth, an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference under the Eighth Amendment. *Durmer,* 991 F.2d at 69; *Spruill,* 372 F.3d at 235. To the extent that Plaintiff argues that the treatment of his right inguinal hernia was delayed and that Dr. Jin interfered with his access to treatment, it seems that he is arguing that Dr. Jin's failure to recommend surgery constitutes delayed treatment and denial of access to treatment. This argument is rejected, as Plaintiff merely disagrees with the course of treatment prescribed to him, which is not actionable under the Eighth Amendment.

Accordingly, it is respectfully recommended that Dr. Jin be entitled to summary judgment on Plaintiff's Eighth Amendment claim.[1]

   d. Conclusion

For the reasons stated above, it is respectfully recommended that Plaintiff Dave Williams' Motion for Partial Summary Judgment [ECF No. 51] be denied and Defendant Byunghak Jin's Motion for Summary Judgment [ECF No. 59] be granted.

Any party is permitted to file Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b), Fed.R.Civ.P. 6(d) and 72(b)(2), and LCvR 72.D.2, Plaintiff, because he is a non-electronically registered party, may file objections to this Report and Recommendation by **March 13, 2017** and Defendants, because they are electronically registered parties, may file objections by **March 8, 2017**.

The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

---

[1] While Plaintiff seeks injunctive relief from Dr. Jin to refer him to surgery, Dr. Jin argues that he no longer is employed at SCI-Greene where Plaintiff is presently incarcerated and Plaintiff's injunctive relief must be denied as moot. Dr. Jin's argument need not be addressed; because there is no constitutional violation, Plaintiff is not entitled to injunctive relief.

Dated: February 22, 2017                                          By the Court,
                                                                  s/ Cynthia Reed Eddy
                                                                  Cynthia Reed Eddy
                                                                  United States Magistrate Judge


cc:     Honorable Nora Barry Fischer
        United States District Judge
        *via electronic filing*

        DAVE WILLIAMS
        FY-3994
        S.C.I. Greene
        175 Progress Drive
        Waynesburg, PA 15370-8090

        All counsel of record via *CM/ECF electronic filing*